# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OSCAR CALVIN, III, ) <br> ) <br> Defendant. ) <br> _____ ) | CRIMINAL ACTION <br><br> No. 12-20006-01-KHV |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Oscar Calvin, III's motion to suppress (Doc. #18). Defendant seeks to suppress evidence seized during the inventory search of his vehicle as well as statements he made after his arrest. The Court held hearings on the motion on May 18 and May 23, 2012. After thoroughly considering the stipulated evidence and the parties' arguments, the Court denies the motion.

### Facts

The parties have stipulated to the following facts. On January 10, 2012, Kansas City, Kansas Police Officer Eckel was patrolling in the area of 12th Street and Quindaro Boulevard. He stopped a 2001 Ford Taurus for violation of the municipal window tint ordinance. Officer Eckel determined that the driver, defendant Oscar Calvin, III, had a suspended driver's license and no insurance, and arrested him.

When Officer Eckel made the traffic stop, defendant illegally parked his vehicle more than 12 inches from the curb. After he arrested defendant, Officer Eckel determined that the vehicle was a traffic hazard and ordered that it be towed. Pursuant to Kansas City, Kansas Police Department

policy, Officer Eckel then conducted an inventory of the vehicle. When he opened the glove compartment he discovered a .45 caliber EAA pistol, serial number EA117419. The firearm was loaded with one round in the chamber and nine rounds in the magazine. In 2004, defendant was convicted of Attempted Second Degree Murder in Wyandotte County case number 03CR1647. As a convicted felon, defendant is prohibited from possessing a firearm.

On January 12, 2012, Detective Sutton went to the Wyandotte County Jail to speak with defendant. Detective Sutton advised defendant of his <u>Miranda</u> rights and told him that Officer Eckel had recovered a gun from defendant's car. Detective Sutton suggested that defendant had carried the gun for protection, and defendant responded, "You're already right, I had it for protection." Defendant then stated that he did not want to give a statement about the case. Just before leaving the room, Detective Sutton turned to defendant and asked if he would give a DNA sample to be compared with DNA on the firearm. Defendant responded, "I've handled that gun, my DNA will be on it."

**<u>Analysis</u>**

Defendant does not challenge the basis of the traffic stop, or the validity of his arrest for failure to produce a valid driver's license and proof of insurance. He does, however, argue that the search of his vehicle violated his constitutional rights. Defendant asserts that all evidence obtained as a result of that search – including the gun and his statements to Detective Sutton regarding the gun – must be suppressed as fruit of the poisonous tree. *See United States v. Wong Sun*, 371 U.S. 471, 487-88 (1963).

The burden is on defendant to prove that the challenged search was illegal under the Fourth Amendment. *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011). Typically, warrantless

searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement. *United States v. Karo*, 468 U.S. 705, 717 (1984). One of those specific exceptions is an inventory search, which "'[is] now a well-defined exception to the warrant requirement of the Fourth Amendment.'" *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) (quoting *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)).

"It is common practice for the police to conduct an inventory search of the contents of vehicles that they have taken into their custody or are about to impound." *Tueller*, 349 F.3d at 1243 (citing Wayne R. LaFave, *Search and Seizure* § 7.4 at 536 (3d ed. 1996 & Supp. 2003)). Inventory searches serve three administrative purposes: "the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." *Id.* An inventory search is reasonable only if conducted according to standardized procedures. *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997). An inventory search must not be "a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory." *Id.* (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990)).

In his motion, defendant asserted that Kansas City, Kansas Police Department Towing Policy did not authorize Officer Eckel to impound his vehicle. Defendant contended that the inventory search therefore was not authorized, but was an exploratory search for evidence of criminal activity prohibited by the Fourth Amendment. At the hearing, however, defendant conceded that his vehicle was illegally parked and that Officer Eckel was authorized to order the impoundment of the vehicle.[1]

---

[1] Kansas City, Kansas Police Department Towing policy provides for towing an unattended vehicle if it is a traffic hazard, *i.e.*, an unattended vehicle illegally left standing on a
(continued...)

Further, defendant conceded that department towing policy required Officer Eckel to complete a full inventory search of the vehicle, including the glove compartment. Defendant has not provided any basis to suppress the evidence that resulted from the inventory search of his vehicle.

At the hearing on May 23, defendant asked the Court to consider *South Dakota v. Opperman*, 428 U.S. 364 (1976), in analyzing this case. In *Opperman*, the United States Supreme Court noted that impoundments by the police may be in furtherance of "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles," and "automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *Id.* at 368. The Court in *Opperman* further noted that the "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369. Nothing in *Opperman* suggests that the search of defendant's vehicle in this case violated defendant's Fourth Amendment rights.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Oscar Calvin, III's motion to suppress (Doc. # 18) is **denied**.

**IT IS SO ORDERED.**

Dated this 15th day of June, 2012, in Kansas City, Kansas.

---

[1](...continued)
highway or under such circumstances as to obstruct the normal movement of traffic. *General Order* 40.8-III(A)(1)(a), Doc. # 19-1 at 2. The policy also provides for towing a vehicle if the driver is arrested and the car is not safely parked. *Id.* at (A)(3)(a), Doc. # 19-1 at 3.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge